**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>William J. Carey</u>


        v.                                    Civil No. 05-cv-274-PB


<u>Hillsborough County
Department of Corrections</u>


### <u>REPORT AND RECOMMENDATION</u>


*Pro se* plaintiff William J. Carey has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging various violations under the First, Eighth and Fourteenth Amendments to the United States Constitution and New Hampshire state law (document nos. 1, 6, 8 and 10).  Named as defendants are the Hillsborough County Department of Corrections ("HCDOC") and three of its officers and employees:  Superintendent James O'Mara[1], Dr. Ward and Corrections Officer Kenyan.  The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

---

        [1]Construed liberally, the complaint names O'Mara as a defendant in his representative capacity.

Also filed is a motion for transfer from the HCDOC to the Cheshire County Department of Corrections ("CCDOC") (document no. 3).  For the reasons stated below, I find that Carey has stated an Eighth Amendment denial of adequate dental care claim, and a related state law negligence claim, against the unnamed HCDOC dentist.  He has also stated Eighth Amendment failure to protect claims against the HCDOC and O'Mara.  I recommend dismissal of all remaining claims.  I further recommend that the motion for transfer be denied.

### Standard of Review

In reviewing a *pro se* complaint, this court must construe the pleading liberally and in favor of the *pro se* litigant.  See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that *pro se* pleadings are given fair and meaningful

2

consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49
(1st Cir. 1988).  I apply this standard in reviewing Carey's
complaint.

Background

Crediting the factual allegations in the complaint in the
light most favorable to Carey, the material facts are as follows.
Carey, a pretrial detainee at the HCDOC, alleges that during the
course of his incarceration prison officials subjected him to
various constitutional deprivations in violation of his rights
under the First, Eighth and Fourteenth Amendments to the United
States Constitution.  Acting in their capacity as state
employees, defendants allegedly failed to protect him from attack
by his cell-mate, denied him adequate medical and dental care and
subjected him to inhumane conditions of confinement and
disciplinary retaliation.  In addition, defendants allegedly
denied Carey meaningful access to the courts and interfered with
his legal mail.  He now brings this action pursuant to Section
1983, alleging that defendants' acts and omissions rise to the
level of constitutional deprivations.

Discussion

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who,

acting under color of state law, violate federal law.  <u>See</u> 42
U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981);
<u>Rodriguez-Cirilo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997).  In
order to be held liable for a violation under Section 1983, a
defendant's conduct must have been a cause in fact of the alleged
constitutional deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>,
436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62
(1st Cir. 1997).  The premise of Carey's Section 1983 action is
that prison officials subjected him to the following
constitutional deprivations in violation of his rights under the
First, Eighth[2] and Fourteenth Amendments to the United States
Constitution.

> A.   <u>Eighth Amendment Claims</u>

> 1.   Failure to Protect

Carey alleges that defendants abridged his Eighth Amendment
rights by placing him in danger and failing to protect him from
an attack by his cell-mate.

Prison officials have an obligation to protect prisoners

---

[2]While the provisions of the Eighth Amendment do not extend
to pretrial detainees, the Due Process Clause of the Fourteenth
Amendment provides them with rights which are at least as great
as the Eighth Amendment protections available to a convicted
prisoner.  <u>See</u> <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st
Cir. 2002).

from violence at the hands of other prisoners.  See Farmer v.
Brennan, 511 U.S. 825, 833 (1994) (citation omitted).  "It is
not, however, every injury suffered by one prisoner at the hands
of another that translates into constitutional liability for
prison officials responsible for the victim's safety."  Id.
"Rather, liability attaches only when two requirements are met".
Espaillat v. Mousseau, Civ. No. 03-338-SM, 2004 WL 2915287, slip
op. at *2 (D.N.H. Dec. 16, 2004).  First, the alleged deprivation
must be objectively serious, that is, showing that the inmate is
incarcerated under conditions posing a substantial risk of
serious harm.  See Burrell, 307 F.3d at 7-8 (citation omitted).
Second, the official involved must have had a sufficiently
culpable state of mind, described as "deliberate indifference" to
inmate health or safety.  Id.  "[A] prison official 'cannot be
found liable . . . for denying an inmate humane conditions of
confinement unless the official knows of and disregards an
excessive risk to inmate health or safety; the official must both
be aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw
the inference.'"  Espaillat, Civ. No. 03-338-SM, 2004 WL 2915287,
slip op. at *2 (citing Farmer, 511 U.S. at 837).

5

Carey alleges that while he was incarcerated at the HCDOC and awaiting trial on nonviolent misdemeanor charges, defendants subjected him to a serious or unreasonable risk of harm by placing him in a cell with a violent inmate.  Because of an alleged HCDOC policy that permits cell changes only for medical reasons, Carey was unable to obtain a cell transfer even though his cell-mate, Joshua "Robbie" Converse, posed a risk of danger. While confined in his cell on June 11, 2003, Carey was assaulted by Converse and sustained several broken teeth and injury to his jaw.  According to Carey, "Converse had a long history of violence, felonies and state [penitentiary] time," and prison officials had knowledge of his propensity for violence.  If true, these allegations may well give rise to a cognizable Eighth Amendment claim premised on the failure to protect against the HCDOC and O'Mara.

> 2.   Denial of Adequate Dental Care and
>      Medical Care

Construed liberally, the complaint alleges that an unnamed prison dentist denied Carey adequate dental care for his broken teeth and injured jaw.  The complaint further alleges that Dr. Ward denied him adequate medical care for a lump of the right side of his neck and for the pain in his right knee and ankle.

To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." See Estelle, 429 U.S. at 97.  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104–05.

"A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17–18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).  The denial of dental care may give rise to a constitutional violation when the denial results in a substantial risk of serious harm to a prisoner.  See Farrow v. West, 320 F.3d 1235, 1243–44 (11th Cir.

2003)(need for dental care combined with the effects of not receiving it may give rise to an Eighth Amendment claim); <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998)(finding serious dental need where plaintiff alleged extreme pain, deterioration of his teeth and an inability to eat properly); <u>Boyd v. Knox</u>, 47 F.3d 966, 969 (8th Cir. 1995)(delay in dental care coupled with knowledge of patient's pain can support Eighth Amendment claim).

With regard to Carey's inadequate dental care claim, he has described a serious dental need.  On June 11, 2003 he sustained several broken teeth and injury to his jaw, including problems with the alignment and movement of his jaw, all of which cause him pain.  Construed liberally, the complaint demonstrates deliberate indifference with respect to the unnamed prison dentist by alleging that once he had knowledge of Carey's serious dental needs, he nevertheless denied him adequate care or failed to ensure that he received proper care.  If true, the allegations may demonstrate that the unnamed prison dentist prevented Carey from receiving prompt and essential dental treatment for a serious condition.  Accordingly, I conclude that Carey has stated sufficient facts for an Eighth Amendment claim premised upon the denial of adequate dental care against the unnamed prison

dentist[3].

As for Carey's allegations of denial of adequate medical care, I conclude that the complaint fails to allege sufficient predicate facts to support an Eighth Amendment claim.  Carey has not identified any serious medical need or condition.  While he claims to suffer from a lump in his right neck and pain and crunching in his right knee and ankle, he has not identified the severity or frequency of his symptoms or any serious medical condition.  Nor has he demonstrated deliberate indifference by any defendant with regard to a delay or denial of medical care.

---

[3]If Carey wishes to pursue his claims against the unnamed HCDOC dentist, he will have to obtain the defendant's full name in discovery and appropriately move to amend the complaint.  To this end, upon service of this action on the named defendants, Carey can serve the named defendants with interrogatories to obtain the full names of the presently unnamed defendant pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

Carey is further instructed to forward a summons to this Court with the defendant's proper name.

He broadly alleges that Dr. Ward denied him "treatment for injuries/medical conditions" but fails to provide any relevant dates or sufficient predicate facts.  In light of his unsupported claims, I conclude that he has failed to allege a cognizable Eighth Amendment claim premised upon the denial of adequate medical care and, therefore, recommend dismissal of this claim.

> 3.   Inhumane Conditions of Confinement

Construed liberally, the complaint alleges that defendants violated Carey's Eighth Amendment rights by subjecting him to inhumane conditions of confinement.  Carey allegedly was denied edible apples and carrots, provided "saccharine-filled" lemon drink and toothpaste and denied use of bathroom facilities during his two-hour session in the HCDOC law library.

Under the Eighth Amendment, prisoners are entitled to adequate shelter, including the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 832-34; Rhodes v. Chapman, 452 U.S. 337, 347-49 (1981).  As stated previously, to successfully allege an Eighth Amendment violation, a plaintiff must first plead facts which, if true, establish that a "sufficiently serious" deprivation occurred.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  A plaintiff must show that the conditions he was forced to endure were beyond the bounds of

human decency, and that the prison officers intentionally or recklessly subjected him to those conditions.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("extreme deprivations are required to make out a conditions-of-confinement claim"); Wilson, 501 U.S. at 298-301.

Here, Carey's conclusory complaints of being denied edible apples and carrots and provided "saccahrine-filled" lemon drink and toothpaste do not allege deprivations sufficiently extreme to establish a cognizable Eighth Amendment claim.  Nor does the fact that he was denied the use of the law library bathroom during a two-hour period rise to the level of an Eight Amendment violation.  As to each claim, he alleges no facts as to the frequency, duration and magnitude of the problems or any ensuing constitutional harm.  See Street v. Fair, 918 F.2d 269, 272 (1st Cir. 1990)(inmate must present sufficient facts to confirm seriousness of harm).  Furthermore, he has not alleged any facts showing that he reported the problems to the defendants or that any officer acted recklessly, or even intentionally, in subjecting him to such conditions.  Accordingly, I conclude that he has failed to state an Eighth Amendment claim premised upon inhumane conditions of confinement and recommend that this claim be dismissed.

B.    <u>First and Fourteenth Amendment Claims</u>

    1.    Denial of Meaningful Access to the Courts

        a)    Library Access

Carey alleges that defendants have denied him meaningful access to the courts in violation of his federally protected rights by restricting his access to the prison law library.

It is undisputed that inmates have a constitutionally protected right of meaningful access to the courts.  <u>See</u> <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir. 2000).  This right, however, only "'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'"  <u>Carter v. Fair</u>, 786 F.2d 433, 435 (1st Cir. 1986)(quoting <u>Bounds</u>, 430 U.S. at 828)).

While a prison inmate retains a right of access to the courts, to establish a claim he must allege that he suffered actual injury as a result of defendants' actions.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 351–52 (1996).  An inmate cannot establish relevant actual injury simply by alleging that "his prison's law library or legal assistance program is subpar in some theoretical

12

sense." Id. at 351.  He must demonstrate that the alleged shortcomings in the law library or legal assistance program "hindered his efforts to pursue a legal claim." Id.  ("He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.").

Here, Carey claims that his right of access to the courts was impermissibly infringed by his restricted use of the HCDOC law library.  For a period of three weeks he was afforded only one and one half hours of library access.  Absent actual injury, there is no indication that his restricted access to the library violates his right to access the courts.  See Sherman v. Peters, No. 92-C-2192, 1996 WL 521404, at *1, 3-4 (N.D. Ill. Sept. 11, 1996) (absent injury, two hours per week of library time not a violation of right to access courts); Hains v. Washington, NO. 96-C-2657, 1996 WL 685453, at * 3 (N.D. Ill. Nov. 25, 1996)(two hours per week of regular library time not a violation of right to access courts, even where library is continually closed under

13

the pretext of institutional security reasons); Hoover v. Watson, 886 F. Supp. 410, 420 (D. Del. 1995) (two to three hours per week of library time not a violation of right to access courts). Carey has not identified any actual injury resulting from his restricted access to the library.  He claims to have four actions pending in four separate courts.  In the instant case, and in his three other cases pending in this Court, he has been able to file numerous pleadings.  Because he has not alleged any actual injury, I conclude that he has failed to allege a cognizable First Amendment violation and therefore recommend dismissal of this claim.

b)   Interference with Mail

Carey broadly alleges that prison officials opened and mishandled his legal mail.  He claims that on July 29, 2005, Corrections Officer Kenyan opened his legal mail in his presence, read the contents and placed the contents back inside the envelope.  To the extent Carey alleges that he has been denied meaningful access to the courts, he has provided little, if any, support for his conclusory assertion that Kenyan unlawfully opened, read, misdirected or tampered with his legal mail.  It is well-settled that prison officials may only open an inmate's legal mail in his or her presence.  See Wolff v. McDonnell, 418

U.S. 539, 576-77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Lepine v. Brodeur, 1999 WL 814277, *3 (D.N.H. 1999).  With regard to an inmate's privileged mail, an isolated incident involving the inadvertent opening of mail, without any evidence of improper motive or resulting interference with the right to counsel or to access to the courts, does not give rise to a constitutional violation.  See Lepine v. Brodeur, No. 97-072, 1999 WL 814277, at *15 (D.N.H. Sept. 30, 1999)(quoting Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990).

Here, Carey has not demonstrated more than an isolated occurrence of inadvertent opening and reading of his legal mail. See e.g. Johnson v. Morton, No, 95-949, 1996 WL 518078, at *2 (E.D.N.Y. Aug. 26, 1996)(single incident of interference with legal mail without alleging any harm as a result of the unauthorized opening failed to state a claim under Section 1983). Nor has he demonstrated any improper motive or ensuing harm, such as interference with his right to counsel or access to the courts.  Accordingly, I conclude that he has failed to allege a cognizable First Amendment violation and recommend dismissal of this claim.

2.   Disciplinary Retaliation

Carey alleges that defendants repeatedly subjected him to

15

unwarranted disciplinary actions and searches to harass him and to "drum up" evidence for use in his criminal proceedings.

"[I]t is well-established that prison officials must provide inmates with access to the courts, and prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts." Penrod v. Zavaras, 94 F.3d 1399, 1404 (10th Cir. 1996)(internal citations omitted).  To prevail on a retaliation claim, an inmate must show: (1) conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Carey alleges that defendants retaliated against him "at the behest of the Merrimack County Attorney's Office and the Manchester Police Department."  He has not identified any constitutionally protected conduct which led to the retaliation. Nor has he alleged that his constitutionally protected conduct was a motivating factor in the decision to discipline him. Accordingly, I conclude that he has failed to state a cognizable retaliation claim and recommend that it be dismissed.

16

3.   Request for Transfer

Carey requests a transfer from the HCDOC to the CCDOC, where he was previously incarcerated and where the conditions of confinement allegedly are more favorable and less restrictive. Construed liberally, the complaint alleges that HCDOC officials have violated Carey's due process rights by denying his request to be transferred to the CCDOC.

"The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Bazzetta v. McGinnis, 423 F.3d 557, 566 (6th Cir. 2005)(citing Sandin v. Conner, 515 U.S. 472, 478 (1995)).  See also Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(stating that not every prison action that adversely affects the prisoner requires due process, such as transfer to a substantially less agreeable prison).  It is well-settled that a prisoner has no constitutional right to be incarcerated in a particular prison and that he may be transferred for any reason or for no reason at all, regardless of differing conditions.  See Meachum v. Fano, 427 U.S. 215, 225-28 (1976).  Even a transfer to a more restrictive facility with more burdensome conditions is within the normal limits or range of custody which the conviction has authorized the State to impose.  Id. at 225 (transfer of an

17

inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one facility are more disagreeable).  Accordingly, I conclude that the HCDOC's refusal to transfer Carey to the CCDOC, a less restrictive or more amenable facility, does not rise to the level of a constitutional violation.  I therefore recommend that his request for transfer be denied.

II.  <u>State Law Claims</u>

Carey alleges that the unnamed HCDOC dentist subjected him to "gross medical negligence" by failing to properly treat his broken teeth and injured jaw.  Although the facts alleged sound only in negligence, the negligence claim is so related that it forms part of the "same case or controversy" of the Eighth Amendment denial of adequate dental care claim.  <u>See</u>  28 U.S.C. § 1367(a) (providing for supplemental jurisdiction over claims that are so related they form part of the same case or controversy).  Accordingly, I conclude that this Court may exercise supplemental jurisdiction over the dental negligence claim.

Carey further alleges that Dr. Ward subjected him to "gross medical negligence" by failing to properly treat the lump on his neck, the injuries to his knee and ankle and his preexisting umbilica hernia and deviated septum.  Because his state law

18

medical negligence claim is conclusory and fails to present sufficient predicate facts, I recommend that it be dismissed in its entirety.

## Conclusion

For the reasons stated above, I find that Carey has stated an Eighth Amendment denial of adequate dental care claim, and a related state law negligence claim, against the unnamed HCDOC dentist.  He has also stated Eighth Amendment failure to protect claims against the HCDOC and O'Mara.  I recommend dismissal of all remaining claims.  I further recommend that the motion for transfer be denied.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. §

636(b)(1); <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979

F.2d 11, 13–14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,

792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date: November 22, 2005

cc:   William J. Carey, *pro se*